IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-21492-CIV-MOORE

DR. PHILLIP W. WATSON,

    Plaintiff,

vs.

THE PAUL REVERE LIFE
INSURANCE COMPANY,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO PARTIALLY DISMISS COUNT II

THIS CAUSE came before the Court upon Defendant The Paul Revere Life Insurance Company's Motion to Partially Dismiss Count II of Amended Complaint (ECF No. 18), Plaintiff's Opposition (ECF No. 19), and Defendant's Reply (ECF No. 20). This Motion is now ripe for review.

UPON CONSIDERATION of the Motion, the Opposition, the Reply, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

**I.    BACKGROUND**[1]

In 1997, Miami Beach Anesthesiology Associates began paying The Paul Revere Life Insurance Company ("Paul Revere") the premium for group coverage under Policy Number G-95473 (the "Policy"), an employee welfare benefit plan. The Policy and payment of benefits is

---

[1] The facts herein are taken from the Complaint (ECF No. 1), Amended Complaint (ECF No. 17), Defendant The Paul Revere Life Insurance Company's Motion to Partially Dismiss Count II of Amended Complaint, and Plaintiff's Opposition. The facts are viewed in a light most favorable to the Plaintiff, Dr. Phillip W. Watson.

governed by the Employee Retirement Income Security Act of 1974, Title 29, U.S.C. §§ 1000-1461 ("ERISA"). Plaintiff Dr. Phillip W. Watson ("Watson"), an anesthesiologist at the time, joined the Policy as a plan participant at its inception.[2] In February 2007, Watson submitted a claim to Paul Revere seeking disability benefits under the Policy. Paul Revere granted Watson's request for disability benefits, and from August 2007 to October 2009, Paul Revere paid Watson $6,000 monthly.

In July 2009, Watson elected to receive Social Security Retirement ("SSR") benefits. On September 30, 2009, Watson advised Paul Revere by letter that he was receiving $1,720 per month from SSR in addition to his disability benefits from Paul Revere. On October 1, 2009, Paul Revere informed Watson that in accordance with the Policy, monies received from SSR would be deducted from Watson's disability benefits. In a subsequent letter, Paul Revere demanded reimbursement of $3,591.23 from Watson, a calculation of the retroactive SSR deductions from benefits already paid to Watson from the Policy.

In the instant case, Watson brings a claim pursuant to ERISA. Count II of Watson's Amended Complaint seeks penalties pursuant to 29 U.S.C. § 1024(b), 29 U.S.C. § 1132(c)(1), and 29 C.F.R. § 2575.502c-1 for alleged failure on the part of Paul Revere to provide Watson with a copy of his insurance policy within 30 days of his request. The statutes and the regulation Watson cites authorize the district court to impose a per diem penalty upon a plan administrator who fails or refuses to comply with a request for certain types of information from a plan participant or beneficiary, including requests for a copy of the insurance policy.

Prior to the instant motion, Paul Revere filed a Motion to Dismiss Count II (ECF No. 8)

---

[2] See 29 U.S.C. § 1002(7) (defining the term "participant").

2

on June 1, 2011. The Court granted the motion in part via an Order (ECF No. 16) on August 15, 2011. That Order instructed Watson that he could proceed with a claim for documents such as those listed in 29 U.S.C. § 1024(b) that were not provided in a timely fashion. See Order at 16. The Order instructed Watson that his Complaint ("Initial Complaint") was unclear regarding what specific documents he requested, and when he requested them. Id. The Court granted Watson leave to amend his Initial Complaint to state what documents under 29 U.S.C. § 1024(b) Paul Revere had failed to furnish; when Watson made the request for those documents; and when, if ever, Watson received the documents. Id. Watson filed an Amended Complaint (ECF No. 17) on August 22, 2011. In Count II of his Amended Complaint, Watson seeks penalties for alleged failure on Paul Revere's part to provide him with a copy of the Policy in May 2007 (the "May 2007 Claim"), and again in February 2009. Watson claims that Paul Revere did not provide a copy of the Policy until November 12, 2009.

Paul Revere contests Watson's ability to bring the May 2007 Claim and seeks to have that portion of Count II dismissed. Paul Revere argues that in his Initial Complaint, Watson only alleged claims for penalties pursuant to a December 2009 request for documents and a February 2009 request. Init. Compl. ¶¶ 33-35. Paul Revere contends that Watson's amendment adding the May 2007 Claim does not properly relate back to the Initial Complaint, and that the claim is barred by the appropriate statute of limitations.

## II. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. Milburn v. United States, 734 F.2d 762, 765 (11th Cir. 1984). On a motion to dismiss, the Court must accept the factual allegations as true

3

and construe the complaint in the light most favorable to the plaintiff. SEC v. ESM Group, Inc., 835 F.2d 270, 272 (11th Cir. 1988). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "But where the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'shown'--'that the pleader is entitled to relief.'" Id. at 1950. A complaint must also contain enough facts to indicate the presence of the required elements. Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1302 (11th Cir. 2007). However, "[a] pleading that offers 'a formulaic recitation of elements of a cause of action will not do.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555). "[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002).

### III. ANALYSIS

#### A. Relation Back to the Initial Complaint

An amendment relates back to the original filing when the claim or defense in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. Fed. R. Civ. P. 15(c). The critical issue in Rule 15(c) determinations is whether the original complaint gave notice to the defendant of the claim now being asserted. Moore v. Baker, 989 F.2d 1129, 1131-32 (11th Cir. 1993) (citing Woods

4

Exploration & Producing Co. v. Aluminum Co. of America, 438 F.2d 1286, 1299-1300 (5th Cir. 1971). If new or distinct conduct, transactions, or occurrences are alleged as grounds for recovery, there is no relation back, and recovery under the amended complaint may be barred by limitations if it was untimely filed. Id. (citing Holmes v. Greyhound Lines, Inc., 757 F.2d 1563, 1566 (5th Cir. 1985)).

Watson's May 2007 Claim is not related to his December 2009 and February 2009 requests which were included in his Initial Complaint. In February 2009, Watson requested a copy of the Policy in contemplation of whether to elect to receive early SSR benefits. Am. Compl. ¶ 18. Once Watson started to receive those SSR benefits, Paul Revere notified him at the end of October 2009 that it was seeking reimbursement of $3,591.23 in SSR benefits that it should have deducted from his disability benefits. After receiving this letter, Watson again requested a copy of the Policy in December 2009, in order to review it and determine whether reimbursement was appropriate. Init. Compl. ¶ 33.

In contrast, according to his Amended Complaint, Watson's May 2007 Claim stems from a request for a copy of the Policy which he made just for the purpose of his own review. Am. Compl. ¶ 18. It was not related to Watson's decision to apply for SSR benefits, nor was it related to Paul Revere's attempt to recoup SSR benefits paid to Watson. Watson did not seek, and Paul Revere did not deduct or attempt to deduct, SSR benefits until 2009. Watson's May 2007 Claim is therefore not related to his February 2009 and December 2009 requests for a copy of the Policy. Moreover, there is nothing in Watson's Initial Complaint that would put Paul Revere on notice of the potential for the May 2007 Claim. Watson asserts that the broad language in his Initial Complaint, wherein he alleges that he "for various reasons requested copies of the Policy

5

on several occasions," put Paul Revere on notice of the potential for inclusion of the May 2007 Claim. Resp. at 4 (emphasis original). Such broad language does little to put a defendant on notice of what might be related. A plaintiff may not plead in broad terms as a means of leaving an open door for further amendment. Watson's May 2007 Claim therefore does not properly relate back to the claims in his Initial Complaint and cannot be part of his Amended Complaint based upon such a theory.

  B. Statute of Limitations, Tolling, and the Continuing Violation Doctrine

  ERISA does not provide its own statute of limitations, and therefore courts either borrow a closely analogous state limitations period, or they apply a contractually agreed upon period, provided it is reasonable. Johnson v. Unum Provident, 363 Fed. App'x 1, *3-4 (11th Cir. 2009) (citing Northlake Reg'l Med. Ctr. v. Waffle House Sys. Emp. Benefit Plan, 160 F.3d 1301, 1303 (11th Cir. 1998)). Here, the Parties agree that Florida Statutes 95.11(3)(n) which allows a four year limit for statutory penalty cases, provides the appropriate statute of limitations. With regard to the May 2007 Claim, Paul Revere asserts that the claim accrued in June 2007, and that per the four year statute of limitations the claim expired in June 2011, barring its inclusion in Watson's August 2011 Amended Complaint. Dismissal of a claim on statute of limitations grounds is proper under Rule 12(b)(6) if it is apparent from the face of the complaint that the claim is time-barred. Tello v. Dean Winter Reynolds, Inc., 410 F.3d 1275, 1288 (11th Cir. 2005).

  Watson alternatively argues that the May 2007 Claim did not accrue in June 2007, but rather in October 2009, when Watson claims he first realized that he had not been sent a copy of the entire Policy that he requested. When Watson requested a copy of the Policy in May 2007, Paul Revere allegedly sent him only a Summary Plan Description ("SPD") which Watson claims

6

he mistakenly believed was a copy of the Policy. Resp. at 6. Watson avers that he did not realize that he was only provided with an SPD as a result of his May 2007 request, and only became aware that the SPD was not the actual Policy when he reviewed the SPD in October 2009. Id.

Watson argues that his lack of "knowledge of injury" should toll the statute of limitations because he was unaware that the SPD that Paul Revere sent him was not the actual Policy. Watson cites Scutieri v. Estate of Raves, 683 F. Supp. 795, 800 (S.D. Fla. 1988), for the proposition that Florida Statutes 95.11(3)(n) should be tolled because Watson was unaware of Paul Revere's failure to provide him with the Policy. In Scutieri, the court tolled the applicable statute of limitations on 42 U.S.C. § 1983 claims when plaintiffs alleged civil rights violations involving conspiracy and fraudulent concealment by defendants. The court pointed out that "knowledge of injury" is relevant when considering whether to toll a statute of limitations on a claim implicating conspiracy or fraudulent concealment. Watson, however, is misguided in citing this case for any precedential value. First, there is a lack of any evidence of misrepresentation, fraud, or concealment on the part of Paul Revere in either Watson's Initial Complaint or the Amended Complaint. Second, in applying Florida's statute of limitations, one must look to Florida law for the proper tolling of the statute.

Section 95.051(1)(a)-(h) of the Florida Statutes sets forth an exclusive list of eight conditions that can toll the running of the statute of limitations. Florida Statutes § 95.051(2) provides an express statement that no other condition can toll the statute. See also Major League Baseball v. Morgani, 790 So.2d 1071, 1075 (Fla. 2001) (stating that § 95.051 "delineates an exclusive list of conditions that can 'toll' the running of the statute of limitations."). None of the

7

conditions listed in § 95.051(1)(a)-(h) exists in this case.[3]

Though Watson does not expressly seek equitable tolling of the statute of limitations, his "knowledge of injury" argument may be construed as an argument for equitable tolling. However, equitable tolling is unavailable to Watson pursuant to Florida Statutes § 95.051(2). Florida's Second District Court of Appeal has held that according to that statute, equitable tolling is not available outside of the administrative context. H.A. Health Servs. of Fla., Inc. v. Hillman, 906 So. 2d 1094, 1098 (Fla. 2d Dist. Ct. App. 2004) (declining to apply equitable tolling outside of administrative actions, noting that "the legislature has made clear its intent to exclude all

---

[3] Fla. Stat. § 95.051. When limitations tolled

(1) The running of the time under any statute of limitations except ss. 95.281, 95.35, and 95.36 is tolled by:

> (a) Absence from the state of the person to be sued.
>
> (b) Use by the person to be sued of a false name that is unknown to the person entitled to sue so that process cannot be served on the person to be sued.
>
> (c) Concealment in the state of the person to be sued so that process cannot be served on him or her.
>
> (d) The adjudicated incapacity, before the cause of action accrued, of the person entitled to sue. In any event, the action must be begun within 7 years after the act, event, or occurrence giving rise to the cause of action.
>
> (e) Voluntary payments by the alleged father of the child in paternity actions during the time of the payments.
>
> (f) The payment of any part of the principal or interest of any obligation or liability founded on a written instrument.
>
> (g) The pendency of any arbitral proceeding pertaining to a dispute that is the subject of the action.
>
> (h) The period of an intervening bankruptcy tolls the expiration period of a tax certificate under s. 197.482 and any proceeding or process under chapter 197.
>
> (i) The minority or previously adjudicated incapacity of the person entitled to sue during any period of time in which a parent, guardian, or guardian ad litem does not exist, has an interest adverse to the minor or incapacitated person, or is adjudicated to be incapacitated to sue; except with respect to the statute of limitations for a claim for medical malpractice as provided in s. 95.11. In any event, the action must be begun within 7 years after the act, event, or occurrence giving rise to the cause of action.

tolling exceptions not listed in the statute."); see also Pierson v. Orlando Reg'l Healthcare Sys., 2010 U.S. Dist. LEXIS 33974, 49-52 (M.D. Fla. 2010).

Watson next asserts that the statute of limitations was delayed in its actual start because Paul Revere's failure to provide him with a copy of the Policy represented a "continuing violation" of section 1132(c) that was not remedied until Paul Revere provided a copy of the Policy in November 2009. The theory of a continuing violation considers a violation to be ongoing until it is remedied. This delays the running of the statute of limitations, which does not begin until the last day the violation is in effect. In applying this theory, courts examine whether the violation in question is one characterized by repeated conduct, rather than a discrete act. Continuing violations are often found in instances of Title VII claims wherein discrimination or sexual harassment are ongoing practices of the offender. See AMTRAK v. Morgan, 536 U.S. 101, 110-21 (2002). Although the Eleventh Circuit has not decided the matter, several Circuit Courts have declined to apply a theory of continuing violation in the context of ERISA claims. See Berry v. Allstate Ins., 84 Fed. App'x 442, 444 (5th Cir. 2004); Tinley v. Gannett Co., 55 Fed. App'x 74, 79 (3d Cir. 2003); Henglein v. Colt Indus., 260 F.3d 201, 214 (3d Cir. 2001); Pisciotta v. Teledyne Indus., Inc., 91 F.3d 1326, 1332 (9th Cir. 1996).

The continuing violation theory cannot be appropriately applied to Watson's May 2007 Claim. Watson's May 2007 request was one discrete instance in which he sought a copy of his Policy, and Paul Revere failed to provide it. The facts indicate that Watson made the request in May 2007, and did not make the request again until February 2009. Am. Compl. ¶ 18. This hardly represents a continuing denial or ongoing violation on the part of Paul Revere.

9

## IV. CONCLUSION

In light of the foregoing, it is

ORDERED AND ADJUDGED Defendant's Motion to Partially Dismiss Count II of Amended Complaint (ECF No. 18) is GRANTED. The portion of Count II which seeks penalties for Defendant's failure to provide Plaintiff a copy of his insurance policy upon his May 2007 request is DISMISSED. Watson may further amend his Amended Complaint in accordance with this Court's instructions within seven (7) days of the issuance of this Order.

DONE AND ORDERED in Chambers at Miami, Florida, this 20th day of October, 2011.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc: Counsel of record